UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID W. SMITH,

           Plaintiff,                                Case No. 06-14088

vs.                                            HONORABLE JUDGE GEORGE CARAM STEEH
                                                     HONORABLE STEVEN D. PEPE

MICHAEL J. ASTRUE,
Commissioner of Social Security,

           Defendant.
=========================/

**REPORT AND RECOMMENDATION**

**I.    BACKGROUND**

David W. Smith brought this action under 42 U.S.C. § 405(g) and § 1383 for judicial review of the Commissioner's final decision denying his application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Both parties have filed motions for summary judgment, which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the following reasons it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**.

    **A.**    **Procedural History**

Plaintiff filed an application for DIB and SSI on February 9, 2004, alleging disability, beginning April 13, 2003, due to internal bleeding, cirrhosis of the liver, nerves, depression, high

1

blood pressure and pain in both knees (R. 60). Plaintiff's claims were initially denied on September 22, 2004 (R. 21), and Plaintiff filed a timely request for hearing on November 4, 2004 (R. 26). At a September 9, 2005, hearing, Plaintiff was represented by attorney, J. Gregory Frye, and Vocational Expert (VE) Annette Holder also testified (R. 224-251). On February 7, 2006, Administrative Law Judge ("ALJ") Richard P. Laverdure issued an opinion denying Plaintiff's applications (R. 15). The Appeals Council denied Plaintiff's request for review on July 20, 2006 (R. 5).

### B.     Background Facts

#### 1.     Plaintiff's Testimony

Plaintiff was born October 8, 1958, and was forty-six years old at the time of his hearing (R. 226). He has an eighth grade education, has not completed a GED or any high school equivalency test and has not had any vocational or trade school training (R. 227). Plaintiff worked in the past as a laborer, a preparation cook and a grocery stock clerk (R. 241).

At his hearing, Plaintiff testified he suffered from hepatitis C, cirrhosis of the liver, depression and nerves (R. 228). The hepatitis C causes him pain in his groin and down his leg, which starts as a sharp pain, then turns into a burning pain and finally goes numb. Plaintiff also complained of constant lower back pain and shoulder pain which he attributed to his hepatitis C and cirrhosis. He also testified that he has shooting pain in both his sides, but he acknowledged that his doctor did not find any medical problems in those areas.

Plaintiff is able to sit for forty-five to sixty minutes before having to get up and move around due to pain (R. 229). When asked what would happen if he tried to sit for an eight hour day he stated that he would become exhausted and would have to get up and move around.

Plaintiff can stand in one place for thirty to sixty minutes at a time, but if he tried to stand longer he would suffer excruciating pain in his left leg (R. 230). Plaintiff stated that he would not be able to perform a job that gave him the option to sit or stand for an eight hour day with regular breaks every two hours because of pain.

Plaintiff can walk a half a block to a block before having to stop and take a break. Bending over to pick up objects such as his wife's cane caused him pain in his back (R. 231). From a sitting position Plaintiff is able to lift up to ten pounds out in front of him before he had trouble picking it up. Pain in his back and legs causes Plaintiff to toss and turn at night (R. 232).

Plaintiff can dress and bathe himself. He was able to boil potatoes for his wife when she made potato salad, and do a little vacuuming, although he did have some trouble pushing the vacuum (R. 233). Plaintiff does not do any yard work and he does not drive (R. 234). He lost his driver's license in 2000 for a DUI, and he testified that he had three or four DUI's altogether. Plaintiff also stated that he drank alcohol only once in the year prior to the hearing (R. 235)

Plaintiff took Vicodin for his pain, but he thought he had built up a tolerance to it because they were no longer helping (R. 232). He also took three showers a day in order to put hot water on his back. He stated that the showers helped ease the pain, but the pain came back shortly after.

### 2. **Medical Evidence**

Medical records indicate that Plaintiff was diagnosed with hepatitis C as early as 2002 (R. 160). Plaintiff's liver cirrhosis was noted as early as February 2004.

On December 7, 2003, Plaintiff sought emergency room treatment for pain in his right

upper leg (R. 127). D.G. Cosentino, M.D., DABR found no bone or joint abnormality and noted the soft tissues were unremarkable (R. 131).

On January 8, 2004, lab reports indicate that Plaintiff's ALT and AST (liver enzymes) levels were abnormally high (R. 154).

On February 3, 2004, Plaintiff was treated for generalized weakness and shoulder pain (R. 133- 39). The nurse noted that Plaintiff stated he had drank "a lot" of alcohol that day, and he could not remember if he had fallen (R. 138).

On April 22, 2004, Plaintiff visited the Coastal Family Health Center, and he was diagnosed with alcoholism, hypertension and nicotine addiction (R. 151). The medical records note that Plaintiff was in no apparent stress at the time.

On April 27, 2004, lab reports again indicate Plaintiff's ALT and AST levels were abnormally high (R. 147).

On July 2, 2004, Dr. Saddler reviewed Plaintiff's medical records and determined that Plaintiff did not meet or equal any listed impairment and rated Plaintiff's physical complaints as non-severe (R. 178-79).

On July 22, 2004, lab reports again indicated that Plaintiff's ALT and AST levels were abnormally high (R. 199).

On August 27, 2004, Plaintiff was evaluated by P. Baddigam, M.D. (R. 160-64). Plaintiff stated he had suffered from depression for years, and that he had cirrhosis of the liver and hepatitis C (R. 160). Plaintiff had been drinking for twenty-eight years and if he had money he would drink all day. He also stated that he had not drunk alcohol in two months since he moved to Michigan to live with his parents. Dr. Baddigam noted that Plaintiff had alcohol on his

4

breath at the time of the examination, but Plaintiff denied any recent drinking (R. 161). Dr. Baddigam diagnosed Plaintiff with alcohol dependency, a depressive disorder, hepatitis C, cirrhosis of the liver and hypertension. He determined that Plaintiff had a GAF of sixty-five (R. 165).[1]

On September 12, 2005, Plaintiff had a liver biopsy which confirmed the presence of moderate chronic hepatitis C, septal fibrosis, mild fatty change (15%) and minimal iron deposition in hepatocytes (R. 206).[2]

### 3. **Vocational Evidence**

VE Holder testified that Plaintiff's past work as a laborer, store clerk and preparation cook were all unskilled medium work (R. 241). ALJ Laverdure asked VE Holder to consider a hypothetical person of Plaintiff's age, education and experience and to assume a capacity for medium exertion work wherein interaction with the public and co-workers is limited to occasionally during the work day, and restricted to simple work (R. 245). ALJ Laverdure then asked VE Holder if that hypothetical person would be able to perform his past job duties of a

---

[1] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASSOC., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, (4th ed.1994) at 30. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *See id.* at 32. A GAF score of 31-40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." *Id*. A GAF of 41 to 50 means that the patient has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." *Id*. A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning. *Id*.

[2] Although the biopsy occurred after the hearing date, ALJ Laverdure allowed the record to remain open so the results of the liver biopsy could be included.

store laborer/clerk or a preparation cook. VE Holder responded that the hypothetical person could do both jobs.

ALJ Laverdure then asked VE Holder to assume the same hypothetical person except that person was restricted to light work rather than medium work. VE Holder gave the following examples of work that the hypothetical person would be able to do: light level assembly, 7,000 jobs in Southeast Michigan and 560,000 jobs nationally; and packer, 3,000 jobs in Southeast Michigan and 240,000 jobs nationally (R. 246).

VE Holder also clarified that a person with a contagious disease would not be able to perform the preparation cook job discussed in the first hypothetical (R. 247).

### 4. **ALJ Laverdure's Decision**

ALJ Laverdure found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2005, and that he had not engaged in substantial gainful activity at any time relevant to the decision (R. 16). He found that Plaintiff's cirrhosis, hepatitis C, depression and alcohol dependence were medically determinable impairments and were "severe" within the meaning of the Regulations, but not "severe" enough to meet or medically equal one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1 (the "Listing").[3]

ALJ Laverdure found that at all relevant times Plaintiff had the RFC to perform medium work as defined by 20 C.F.R. 202.1567(c) and 416.967(c) with occasional interaction with coworkers and the public and not involving food handling.

In determining Plaintiff's RFC, ALJ Laverdure accorded significant weight to the

---

[3]ALJ Laverdure found Plaintiff's hypertension "non-severe" within the meaning of the Regulations because nothing in the record indicated that the hypertension had more than a minimal effect on Plaintiff's ability to work for twelve continuous months.

objective medical evidence. ALJ Laverdure found that Plaintiff was not receiving active treatment for his liver disease, and there was no evidence that Plaintiff had ever received treatment for his "allegedly disabling 'nerves' or depression" (R. 17). He noted that Dr. Baddigam assigned Plaintiff a GAF score of sixty-five indicating that Plaintiff had only mild difficulty functioning because of his conditions.

ALJ Laverdure found Plaintiff's subjective statements of pain not credible. He noted that despite alleging disabling pain Plaintiff reported that he had no complaints when seen at K & S Family Practice in July 2004 (R. 18). Furthermore, there was no indication in the record that Plaintiff reported back or knee pain to any of his physicians. Finally, ALJ found Plaintiff's allegations of disabling pain and other symptoms to be undermined by Plaintiff's assertion that "he had been sober for two months when seen by Dr. Baddigam despite the odor of alcohol that emanated from him at that time."

ALJ Laverdure found Plaintiff was unable to perform past relevant work. Relying on VE Holder's testimony, ALJ Laverdure concluded that there were jobs existing in significant numbers in the national economy which Plaintiff can perform, therefore ALJ Laverdure found that Plaintiff was not disabled

## II. ANALYSIS

### A. Standards of Review

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence has been defined as

"[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Brown*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

### B. <u>Factual Analysis</u>

In his motion for summary judgment, Plaintiff argued that (1) ALJ Laverdure erred when he found Plaintiff did not meet or equal a Listing level impairment; (2) ALJ Laverdure improperly assessed Plaintiff's pain because he improperly discredited Plaintiff's testimony; and (3) ALJ Laverdure erred by restricting the types of questions Plaintiff could ask VE Holder at Plaintiff's hearing (Dkt. # 12).

#### 1. *<u>Listing Level Impairment</u>*

Plaintiff argues ALJ Laverdure erred when he found that Plaintiff did not meet or equal a Listing level impairment (Dkt. #12, p. 7-8). For Plaintiff to show that his impairment matches a Listing, it must meet all of the specified medical criteria. Each impairment is defined in terms of several specific medical signs, symptoms or laboratory test results. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Plaintiff contends that ALJ Laverdure erred in finding Plaintiff did not meet or equal section 5.05 (F) of the Listing of Impairments. ALJ Laverdure expressly addressed Plaintiff's condition within the context of section 5.05 (F) and concluded that Plaintiff did not meet or

equal that impairment. Section 5.05 (F) says in part:

> 5.05 Chronic liver disease (e.g., portal, post necrotic, or biliary cirrhosis; chronic active hepatitis; Wilson's disease). With:
> . . .
> F. Confirmation of chronic liver disease by liver biopsy (obtained independent of Social Security disability evaluation) and one of the following:
> 1. Ascites not attributable to other causes, recurrent or persisting for at least 3 months, demonstrated by abdominal paracentesis or associated with persistent hypoalbuminemia of 3.0 gm. per deciliter (100 ml.) or less; or
> 2. Serum bilirubin of 2.5 mg. per deciliter (100 ml) or greater on repeated examinations for at least 3 months; or
> 3. Hepatic cell necrosis or inflammation, persisting for at least 3 months, documented by repeated abnormalities of prothrombin time and enzymes indicative of hepatic dysfunction.

20 C.F.R. Part 404, Subpart P, Appendix 1 § 5.05 (F)

Plaintiff argues that the results of the September 12, 2005, liver biopsy (R. 206), along with laboratory results from January 2004 through July 2004, which indicate increased levels of AST and ALT enzymes (R. 147, 154, 198), demonstrate that he meets or equals Listing 5.05 (F)(3) (Dkt. #12, p. 8).

Yet, section 5.05 (F)(3) requires a showing of hepatic cell necrosis or inflammation which must be documented by repeated abnormalities of prothrombin time *and* enzymes indicative of hepatic dysfunction. Plaintiff has presented evidence of abnormalities of enzymes, but he did not provide any evidence of abnormal prothrombin times. On its face, section 5.05 (F) requires that a finding of hepatic cell necrosis or inflammation with documentation of both abnormal prothrombin time and enzymes findings.[4] Because Plaintiff has not demonstrated that

---

[4] Using general principles of statutory interpretation, the word "and" requires that both conditions must be met in order to demonstrate hepatic cell necrosis or inflammation.

9

his condition meets all of the listed criteria, ALJ Laverdure did not err when he found that Plaintiff did not meet a Listing level impairment.

## 2. *Plaintiff's Credibility*

Subjective evidence is only considered to "the extent…[it] can reasonably be accepted as consistent with the objective medical evidence and other evidence" (20 C.F.R. 404.1529(a)). The ALJ is not required to accept a claimant's own testimony regarding allegations of disabling pain when such testimony is not supported by the record. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The issue of a claimant's credibility regarding subjective complaints is within the scope of the ALJ's fact finding discretion. *Kirk v. Secretary of health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981); *Jones v. Commissioner of Social Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

In order for an ALJ to properly discredit a claimant's subjective testimony, the credibility determination must be accompanied by a detailed statement explaining the ALJ's reasons. S.S.R. 96-7p directs that findings on credibility cannot be general and conclusory findings, but rather they must be specific. The ALJ must say more than the testimony is not credible. *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994), made it clear that the ALJ cannot merely recount the medical evidence and claimant's daily activities and then without analysis summarily conclude that the overall evidence does not contain the requisite clinical, diagnostic or laboratory findings to substantiate the claimant's testimony regarding pain. *Id*. at 1039.

ALJ Laverdure had substantial evidence to discredit Plaintiff's testimony. ALJ Laverdure measured Plaintiff's testimony against the objective medical evidence, the claimant's daily activities, the location, duration, frequency and intensity of his pain, precipitating and

aggravating factors, use of medications, treatment other than medications, other measures used to relieve pain and other factors concerning Plaintiff's functional limitations and restrictions due to his symptoms (R. 17). In comparison with the above mentioned factors ALJ Laverdure found Plaintiff's testimony not "convincing or credible." He noted that despite alleging disabling pain Plaintiff reported that he had no complaints when seen at K & S Family Practice in July 2004 (R. 18). Furthermore, there was no indication in the record that Plaintiff reported back or knee pain to any of his physicians. Finally, ALJ Laverdure found Plaintiff's allegations of disabling pain and other symptoms to be undermined by Plaintiff's assertion that "he had been sober for two months when seen by Dr. Baddigam despite the odor of alcohol that emanated from him at that time."[5]

Because ALJ Laverdure properly discredited Plaintiff's testimony, Plaintiff's assertion that ALJ Laverdure erred when he disregarded Plaintiff's complaints of fatigue upon exertion, pain and other symptoms is without merit.

### 3. *Questions for VE Holder*

Plaintiff contends ALJ Laverdure erred when he restricted the type of questions Plaintiff could ask VE Holder at Plaintiff's hearing (Dkt. #12, p. 12). ALJ Laverdure instructed Plaintiff that he could ask VE Holder other hypotheticals, but he "need not ask any questions the premise

---

[5] In 1996, Congress passed the Contract with America Advancement Act of 1996 which amended portions of the Social Security Act which defined disability for purpose of Title II and Title XVI benefits. Pub.L. 104-121 §§ 105(a)(1), 105(b)(1), 110 Stat. 847, 852-53 (1996) (codified at 42 U.S.C. §§ 423(d)(2)(c), 1382c(a)(3)(J) (West Supp.2000)). Section 105 of that legislation, entitled "Denial of Disability Benefits to Drug Addicts and Alcoholics," states that "[a]n individual shall not be considered to be disabled for the purposes of this Title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." Before this limitation is applicable, there must first be a finding of disability, which has not occurred in this case.

of which is the inability to sustain a full eight hour day" (R. 247). ALJ Laverdure explained that Plaintiff need not ask those questions because they assume the answer given that, "anything that reduces the RFC to less than regular full time work by definition is not full time work." While the Commissioner's regulations at 20 C.F.R. § 404.1572(a), § 404.1573(e), § 416.972(a) and §416.973(e) allow a finding of "substantial gainful activity" to include part time work for certain workers, ALJ Laverdure indicated his belief that, at least for workers like Plaintiff with limited education and unskilled work experience, full time work was needed to be substantially gainful (R.248). It is apparent that he believes in a case such as this involving limited education and no skills that an inability to do "regular full time work" would not allow a finding of an ability to perform substantial gainful activity at step five of the Commissioner's sequential evaluation. ALJ Laverdure found that Plaintiff could not do his past medium exertion work, but could perform the non-food service jobs identified by VE Holder (R.19). Nothing in his questions to her or in his decision suggested any finding that Plaintiff could not perform on a "regular full time work" basis which would include normal breaks. While it would have been better to have allowed Plaintiff's counsel to ask the hypothetical question limiting the worker to less than an 8-hour work day, it cannot be said that ALJ Laverdure ruling out any question that he believed "assumes the answer" of disability was an abuse of discretion in conducting a hearing warranting reversal and remand.

Plaintiff's counsel cites no legal authority to support his argument nor does he explain how ALJ Laverdure limiting the type of questions that he could ask VE Holder denies Plaintiff a fair hearing. It is well settled law that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not

12

sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to...put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)). Plaintiff does not explain how asking the type of questions which ALJ Laverdure barred him from asking would have provided any probative information. Plaintiff merely asserts, in a conclusory manner, that he was denied a fair hearing because his ability to ask questions was limited. Accordingly, Plaintiff's argument is without merit and should be denied.

Plaintiff's counsel submitted two letters to the Appeals Council regarding Plaintiff's hepatitis treatment and symptoms (R. 221-22). He has not moved for a remand under 42 U.S.C. § 405(g) and it is not clear that this evidence meets the standards warranting a remand, particularly "good cause for the failure to incorporate such evidence into the record in a prior proceeding.." [6]

## III.   RECOMMENDATION

For the reasons stated above, it is Recommended that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**. The parties to this action may object to and seek review of this Report and Recommendation, but are

---

[6] Sentence six of 42 U.S.C. § 405(g) provides in relevant part:

The court may . . . remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local, 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: July 31, 2007　　　　　　　　　　　　　　　s/Steven D. Pepe  
Ann Arbor, Michigan　　　　　　　　　　　　　　United States Magistrate Judge

CERTIFICATE OF SERVICE

       I hereby certify that on <u>July 31, 2007</u>, I electronically filed the foregoing paper with the Clerk Court using the ECF system which will send electronic notification to the following: <u>J. Gregory Frye, Esq., James A. Brunson, AUSA,</u> and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:<u>Social Security Administration - Office of the Regional Counsel, 200 W. Adams, 30th. Floor, Chicago, IL 60606</u>

                  <u>s/ James P. Peltier</u>
                  James P. Peltier
                  Courtroom Deputy Clerk
                  U.S. District Court
                  600 Church St.
                  Flint, MI 48502
                  810-341-7850
                  pete_peliter@mied.uscourts.gov